The opinion of the Court was delivered by
WITHERS, J.
To what appears in the brief it is proper to add, that before this plaintiff executed the note of George 0. Ehyne, upon which the latter obtained the judgment, this plaintiff would now have extinguished by a set-off, he knew that the property he bought from George 0., and which was the consideration of the note, belonged to J. N., the brother of George 0.
There arises out of this fact such an equity in the money secured by the note in favor of J. N. Ehyne, known to Meador at its inception, as must be influential in adjudging this question of set-off of judgments, though it might have been quite unavailing, if the question had arisen on the law of discount.
*635 The argument in this Court in behalf of Meador is founded upon an analogy derived, it is contended, from our law of discount; and the incongruity is urged, that, in denying this motion, Meador is placed in a worse situation by having converted his demand against George C. Rhyne into judgment, than he would have been if he had held it to be offered in discount, when sued upon the note in favor of him.
This condition of things may well exist without settling the question now before us. The Courts of England do not exercise the power to order the set-off of judgments by virtue of the statutes of set-off, Mitchell vs. Oldfield, 3 T. R. 123; nor do we exercise the like power upon the footing of our law in relation to discount; vide, Low vs. Duncan, 3 Strob. 195. “ The' power springs (it is said in the last cited case) from the general jurisdiction of the Court over the suitors in it, and the equitable cognizance which it takes of their respective rights and liabilities.” And with this the English view certainly agrees. The law of discount itself was passed, as its preamble recites, “for the sake of justice and to prevent a multiplicity of suits” — and such considerations, being of an equitable nature, have persuaded this Court to notice the equitable claims of those who are not parties by the rules of law — as may be found illustrated by many examples in our books; among them being Newman vs. Crocker, 1 Bay, 245, in 1792; and Tibbetts and Weaver, 5 Strob. 144, in 1850. If the equities of third persons are noticed in the administration of the law of discount, as those two cases so strongly illustrate, the more readily should they be noticed in the matter of setting off judgments. There is, perhaps, less room for the introduction of equitable considerations in the law of set-off in England, than there is in the application of our law of discount; and the Act of 1798, in favor of assignees of bonds, &c. Tet in Read vs. Dupper, 6 D. & E. 361, Lord Kenyon: said, that in strictness of law, a chose in action is not assignable ; but still, according to the rules of equity and honest *636 dealing, if the assignee give notice to the debtor of such assignment, be shall not afterwards be suffered to avail himself of a payment to the principal in fraud of such a notice. This is altogether agreeable to our doctrine as exemplified in Newman and Oroclcer, and Tibbetts and Weaver.
To show how the subject now before us is treated in England, it will suffice to refer to two cases: Doe v. Darnton, 3 East, 149; Randle vs. Fuller, 6 D. & E. 456. The first refused to set-off Darnton’s judgment against one recovered against him by two others, because one of the two had, under the insolvent laws, gone into the hands of assignees, and thus had introduced the claims and interests of other persons, creditors represented by the assignees; and Lord Ellen-borough took occasion to express a strong disinclination to extend the power of setting^off debts, on general grounds of equity, beyond the line which the Legislature had thought proper to mark out. The other case refused to sanction a set-off of judgments, accomplished by the parties out of Court, in disregard of the lien of the attorney for costs, which lien was known, and the claim of it, to the party chargeable therewith.
, Now, in the present case, Meador, who would have set-off the judgment against him in favor of Geo. 0. Rhyne, knew it was founded (so say the affidavits, the only evidence we have,) on a note belonging, in the- equitable sense, to J. N. Rhyne, and knew, when he signed the note, that it was given for property belonging to J. N. R. It is further stated, that J. N. R. had possession of the note, though not assigned in law, before Meador took his confession of judgment against Geo. C. Rhyne. Now here was created an interest which, a Law Court would notice so far, that it would regard George C. as nominal plaintiff, and would not allow him to discontine an action to the prejudice of the equitable owner, and would protect his claim in case of a rule upon the Sheriff, against *637 any equal equity at least, and if be bad notice, would not sanction bis payment to tbe payee.
Sucb considerations, fortified by authorities cited, conduct us to tbe conclusion, that tbe Circuit Court was right in refusing tbe motion for set-off; and tbe judgment of tbe same is, therefore, affirmed, and tbe motion here dismissed.
O’Neall, Waedlaw, WhitNee, Glovee and Muíteo, JJi, concurred.

Motion dismissed.